Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. Mr. Stevens, are you ready? May it please the Court, my name is Mark Stevens and I represent the petitioner Omar Thompson. The Virginia statute at issue in this case, custodial indecent liberties, is not a crime of sexual abuse of a minor for three reasons. First, it criminalizes consensual activity with victims up to 18 years old and does not require sexual intercourse or any sexual contact whatsoever. Second, it does not require any age difference between the victim and the offender. And third, it does not require a special relationship of trust. The Supreme Court held in Esquivel-Cantanovi sessions that it is not sexual abuse of a minor to have consensual intercourse with a 17-year-old victim. If that's the case, then it is also not sexual abuse of a minor to commit acts leading up to sexual intercourse with that same 17-year-old victim, such as proposing sexual activity or exposing oneself. Excuse me though, Mr. Stevens, the Supreme Court specifically carved out the situation of a supervisory relationship and said we're not talking about those kinds of statutes. So how does that fit into your rationale here? That doesn't necessarily mean that everything involving some special relationship is included. They just specifically weren't holding about those cases. And when you look at every time they talked about the relevance of a special relationship, it was always in conjunction with some sexual act. They said there might be a higher age of consent in cases involving a special relationship. That means the age at which a minor can consent to sexual intercourse. And that link between the special relationship and the sexual act, it's explicit at the end of the opinion when they say we leave for another day, whether the generic offense encompasses sexual intercourse involving victims over the age of 16. Excuse me, counsel. Yes. In our earlier North Carolina decision, Perez versus Perez, that and the Virginia decision seem to have one point in common, and that is that they could qualify as an aggravated felony even without any actual physical contact. And so you made a point of saying that the Virginia statute didn't require any kind of sexual intercourse, but neither did the North Carolina statute, as I understand it. And that statute was upheld in our precedent under Perez. Correct, Your Honor. That statute was limited to victims under 16, and so therefore the Supreme Court's holding has nothing to say about that type of a crime. And also, Your Honor's opinion in Rangel-Castaneda, Your Honor held something similar, that the general age of consent is 16, and Your Honor said that you weren't holding anything about crimes involving a special relationship, and you pointed to- Wasn't that a statutory rape case? Yes. It was a sentencing case, and this Court later held that the standards are the same. But Your Honor pointed to a New Jersey- I know what I pointed to, but all I'm saying is this holds true with Esquivel-Quintana, is that statutory rape, as has been pointed out in the briefs, is a strict liability offense, and it just proceeds from the age of the victim itself. But here the Virginia law does have a mens re element, and that is knowingly and intentionally committed the prohibited acts. That kind of mens re element isn't present in a statutory rape case, is it? The Supreme Court didn't say that statutory rape laws were strict liability. They said statutory rape laws generally- Well, I mean, we know the types of laws that they were working with, because they told us that the laws generally provide that an older person may not engage in sexual intercourse with a younger person under a specified age, known as the age of consent. So the words strict liability are nowhere in that opinion. I also pointed out that due to the structure of our statute here, the reference to knowingly and intentionally comes long after the reference to the age of the victim, so it's not entirely clear whether this statute is strict liability as to the age of the victim. The government hasn't pointed to any case stating that this is a strict liability offense. So every time the Supreme Court talked about a special relationship, it was always in conjunction with some sexual act, and that was the same- Let me- I'm just making sure. I'm trying to understand your argument. Your argument, as I understand you saying to Judge Wilkinson and from your brief, is that the Fourth Circuit case law in Perez and Larios-Reyes that hold that non-contact action, so enticement-type actions, proposition-type actions, that that qualifies as sexual abuse. You're asking us to say that those were overruled by the Supreme Court in Esquivel-Quintero, correct? No, Your Honor. I don't think we have to do that. And the reason is- So tell me why not. So why- then I don't understand your response to Judge Wilkinson, because those cases seem to stand for the proposition, as they define it, that you don't have to have an actual intercourse. You don't have to have a contact offense, that it includes non-contact offenses as well. And so why are we having this discussion if those cases are not overruled? Because the Supreme Court held that there's something special about 16- and 17-year-olds. They're generally capable of consenting to sexual intercourse. So if you look at the statutes in Perez-Perez and also Diaz-Zabara, they all involved victims under 16. So therefore, the Supreme Court case is not relevant. That isn't really what Judge Richardson asked you. He asked you whether there was anything in that decision that overruled those cases to the extent that non-physical conduct was disqualified as of sexual abuse of a minor. Was there anything in that Supreme Court decision that said that enticement and illicit communications over the Internet with a minor, that that could not qualify? In other words, the essential proposition with Perez was that non-physical conduct could qualify. And Judge Richardson asked you, is there anything in Olmec-Squinell-Quintana that said to the contrary, and you've not pointed to anything. Well, they held something special about victims who are 16 or 17. So there is some tension between the opinions, and I've tried to resolve that. But you agree that tension doesn't help you, right? We're a panel, and we're looking at those prior decisions. I'm just curious why you keep coming back. Do you think that your case depends on this idea that non-contact offenses can't qualify? I mean, you keep coming back to that and trying to tie it back. That seems squarely foreclosed, and so I'm just curious why you keep going back to it in a scenario where it seems squarely foreclosed, which makes me wonder. I'm just curious why. If this statute had been limited to people who were under 16, then absolutely it would be squarely foreclosed. So I agree on that point. But the Supreme Court held that there's something special about older victims who are included in this statute. The Fifth Circuit held last year in a case involving a solicitation offense that Esquivel-Quintana did displace part of their definition of the generic offense. This case was not briefed, so I'm a little hesitant to bring it up, but this seems the direction that we're going in. It's called Shroff v. Sessions. It's 890-F3-542. That case involved an online solicitation of a minor, and they held that the Supreme Court decision had displaced earlier Fifth Circuit case law. I don't think we have to overrule previous cases. There's certainly some tension. For example, some statements in Diaz-Obarra say that this is an entirely intent-focused generic offense, that if someone has the intent to gratify sexual desires, that that's all we need. I agree there's some tension between that and the Supreme Court decision, but all of these statutes which have been ruled to be sexual abuse of a minor, I don't think I'm changing any of that. I'm not changing this circuit's generic definition of sexual abuse of a minor. I believe some accommodations have to be made. Judge Wilkinson, you noted that uniformity is important in this area of law, and so I think it does not make sense to ignore a Supreme Court decision, which is the only body capable of imposing uniformity on this area of law. I just thought the Virginia offense was very different because it wasn't a statutory rape offense. I read Esquenelle Quintana to be dealing with a special category of statutory rape, and even within that subcategory, victims who were 16 or 17 years old, and that didn't seem to me to open the door to abuse of minors in other ways. One question I have for you is, isn't the Virginia statute in a sense narrower than some of those we've dealt with previously because it's narrow to the abuse not only of a minor, but the abuse of a position of trust, which seems to me to make an extra level of egregiousness to it, and what you wanted to get at with coaches and scoutmasters and teachers and everything who were taking advantage of that relationship of trust to abuse young children, and the supervisory relationship aspect of this I took as a narrowing factor. It wouldn't even be general sexual abuse of a minor. You would have to somehow have a position of trust. I mean, the tragic and unfortunate situations in many of our churches illustrate, underscore, the kinds of things I thought Virginia was trying to get at. If you step back a second and ask what the whole purpose of the sexual abuse of a minor is under the INA, it's hard to believe that Congress really wanted this kind of individual not to suffer immigration sanctions for this sort of behavior. It seems what he was doing was just what Congress was getting at. Yes, well, Mr. Thompson is suffering consequences regardless of this court's holding. He's deportable under another ground of removability, and so if this court rules in our favor, he'll have to go before an immigration judge and show the facts of his crime and explain why the facts of his life outweigh the negative factor of his crime. But to get to the point of your question, if a statute was limited to certain designated leadership positions, such as scout leader, teacher, things like that, then I would have no problem. But in Virginia, the case law is very wide. They said that a custodial supervisory relationship was formed because a gentleman gave someone a ride, a 15-year-old. So that's a relatively tenuous relationship. It can be formed with no formality. But if the federal statute doesn't require any supervisory relationship whatsoever, it can be anybody on the planet who does these things, then why does that make any difference? Is Your Honor referring to 18 U.S. Code 2243, the only federal criminal statute? No, what I'm talking about is in Larios-Rios, this court talking about the plain meaning of the term sexual abuse of a minor and what the generic federal offense is. And in talking about the generic federal offense, there's no mention at all of a supervisory relationship. And so why does this argument help you? Because as Judge Wilkinson is saying, the statute in Virginia is narrower, because even if it extends to the person who's giving somebody a ride, the generic federal offense applies to everybody in the world who does these acts. Right. Anybody in the world who does it without some special relationship, the victims must be under 16. Under Esquivel-Quintana. So the relevance of the special relationship- Esquivel-Quintana was a statutory rape, and that's an entirely different creature. I mean, that presumes consent, does it not? Well, our statute also says nothing about consent. Yeah, but for the age. But this is, okay. I understand, I think, what you're saying. So basically, I see my time is up. All right. Well, you've got some rebuttal. Thank you. Mr. Bocchini, we're happy to hear from you. Thank you, Your Honor. May it please the Court, Walter Bocchini for the government. The government's position is that the court should deny this petition for review because the statute of conviction here is a categorical match to this court's definition of sexual abuse of a minor, as articulated in Perez-Perez, Diaz-Zabara, and Larios-Reyes.  Could you speak up a little bit for me? Yes, I'm sorry. In addition, the statute of conviction here has a limiting element that takes it out of any possible application of the rule in Esquivel-Quintana that the age of consent is 16 years old. And that limiting element, as the Board of Immigration Appeals explained, is this special custodial or supervisory relationship that is required as a predicate for the crime or conviction. Let me ask you the question that I started off with your colleague on, and he sort of, I think, didn't want to exactly answer it. But I want to try to answer it for him and let you give me a response. So I read Esquivel-Quintana when they describe sexual abuse. Just as Thomas goes through, he describes sexual abuse, and he describes it in a couple of ways. One, he points to 2243, and he doesn't say that's exclusive, but it's a guide. And we know 2243 involves contact. Those are intercourse-type cases. But even before that point, when he describes sexual abuse, he describes it two different ways. One, he refers to the dictionary definition using sexual contact. And then accordingly, he explains, to qualify as sexual abuse, the statute of conviction must prohibit certain sexual acts. And so if we take those three things together, so we take sexual contact, which is Justice Thomas' phrase, sexual acts, which is his phrase, and his reference to 2243, why wouldn't we take this decision as suggesting to us that our prior decisions in Perez and Larios-Reyes are wrong? And we may not be able to do that as a panel, but as suggesting that actual action is required. Well, Your Honor, I think it's in the context of the decision itself, because it was dealing exclusively with statutory rape, which, of course, necessarily requires a sexual act. So I think the whole decision simply doesn't have to address that issue and is forming it in that context. I would point out – But it does point – I mean, I take your point, and that may be sufficient. But just help me understand, because it does point to a dictionary definition, right, that's sexual contact, right? It points to 2243, which is sexual contact. It describes sexual actions, right? All of those phrases, it does, not in the specific context of the case, but in trying to understand, you know, as it says, we begin with the text, right? It's trying to define the phrase sexual abuse of a minor. Why is it that – your point is, this is dicta, don't rely on it. But I'm a little hesitant about taking that approach with the Supreme Court. Well, I would say that, just as Thomas said four times, we're talking about in the context of statutory rape. So it takes it out of any application beyond that. In the context of generic statutory rape, then the reference to the statute makes sense and the reference to sexual contact makes sense. But to read beyond that, I think, goes well beyond what the Supreme Court intended in Esquivel-Quintana. And in the Fifth Circuit, in the Shroff case that my colleague mentioned, actually dealt with the same question. They also had a definition of sexual abuse of a minor that included both physical and nonphysical conduct. And they did held that Esquivel-Quintana applied there with respect to the age of consent. But before reaching that, they said, no, it did not change anything with respect to what the contact is required for there to be sexual abuse of a minor. And the rationale was because the Supreme Court was only talking about, in the context of statutory rape, it was only talking about age. That was the only thing that they were discussing, was the age requirement. Are you aware of any – and there's no reason you should – but are you aware of any statutory rape statutes that include enticement or inducement as the offense aspect? Or do all statutory rapes that you're aware of – and I'm not holding you to this, this is a little off the wall – but that include inducement or enticement, or does statutory rape, by definition, require contact? I think that statutory rape, by definition, does require contact. But, Your Honor, it does raise one statute that comes to mind is 8 U.S.C. 3509, which is the – 18 U.S.C., I'm sorry – which is the Rights of Child Abuse Victims. And that one is a broad provision that includes inducement and other non-physical contact. One response, if the Supreme Court was going to say that physical contact was required for sexual abuse and that non-physical contact, even salacious Internet exchanges and everything, that that would – was disqualifying, that would be a huge step. And it would not be a matter, I suppose, that the Supreme Court would want to approach implicitly. That would be something that it would address frontally and head-on and not by implication. And as Judge Richardson pointed out earlier, if there is a tension, tension may not be enough. But that would be a big, big step to say that sexual abuse had to be purely physical when sexual abuse can take many other forms. And to take that rather giant step, I think it would have to be something that was confronted frontally, not by implication. Absolutely, Your Honor. That is certainly how the government reads Esquivel-Quintana and how Justice Thomas went out of his way to repeatedly say how narrow the decision was. It's only in the context of generic statutory rape as one example of the category of crimes of sexual abuse of a minor. So in one sense, it's – It may be that they'll arrive at that point one of these days. I rather doubt it. But, you know, it could be. I just don't think they have yet. No, and they – and even within this special carve-out that they did, they also carved out another – an exception to the carve-out when there is a special relationship of trust. And I think that in the special relationship of trust is essentially what the Virginia statute here requires. So with that requirement, there's no possible application of Esquivel-Quintana. And I would point out that the state statutes that were referenced – I mean, even a situation that is not remotely, you know, an Internet communication or texting or whatever, if you were to have a physical contact as a precondition of sexual abuse of a minor, you would open up to someone where an adult here in a relationship of trust simply stripped to the nude and exposed himself to a minor within his care but avoided touching or a situation in which a minor was ordered to undress and pose for photographs in the creation of child pornography. In all of these rather vile situations, there's no physical contact. But it's hard to believe it would not qualify as sexual abuse. Right, and this Court's precedent has explicitly held that it does. By that rationale, pretty much in that same rationale, I think the example that was used in Perez-Perez was a sleeping child. Just because a sleeping child is not aware that something in sexual nature occurred doesn't mean that the perpetrator can escape the definition of sexual abuse of a minor. So I think it goes along the same as those lines. The definition should be broad, must be broad, to cover all these possible scenarios where we have a young child who's not aware of the consequences of what's happening, where there is nonphysical conduct in the form of inducements and such, especially now in the age of the Internet. And this Court's case law predating Esquivel-Quintana has not been altered in any way by Esquivel-Quintana. Esquivel-Quintana was very narrow and only in the context of generic rape. And even within that context, it said it was not addressing the issue of when dealing with a statute of special relationship with trust. Judge Wilkinson's question raises another point. You pointed to 3509 as a federal definition that includes noncontact. What about 2422, which is the inducement to engage sex with a minor? Maybe you're not familiar with that one. I'm not familiar with that one. I did want to address the nature of the relationship that is required in Virginia because I think that the examples that my colleague has provided really only exist in the realm of theoretical possibilities. This is not a realistic probability showing. And to the contrary, as we argue in the brief, the Hutton case establishes the contrary, that there needs to be more than simply presence with a minor for the relationship to arise. There is a key question that needs to be answered, and that's whether the adult exercises care and supervision, care and responsibility over the minor's safety and well-being. And I think that once that is implicated, then you have a relationship that invokes, that implicates a power dynamic. And an abuse of that relationship, and sexual conduct in the context of that relationship is inherently abusive. In the case, in the statutes that the Supreme Court cited in Esquivel-Quintana, directly or indirectly, four of them, that would be Alaska, District of Columbia, Utah, and Wyoming, they all have predicate relationships that are very similar to the ones that are in Virginia, where it's Alaska and District of Columbia have a position of authority, and then Utah and Wyoming have a position of special trusts, and all of those have catch-all provisions further defining those relationships. And for the District of Columbia, it's any person in a position of trust or authority over a child. In Utah, it's any individual in a position of authority, which enables the individual to exercise undue influence over the child. And in Wyoming, it's a position of authority with a catch-all. Any other person who, by reason of his position, is able to exercise significant influence over the child. So I think that the relationship that the Supreme Court envisioned as a special relationship of trust is one that does implicate this imbalance of power and abuse of trust and abuse of authority by the adult over the minor when they engage in sexual activity. I would also point out that as, well, as your Honor is aware, Esquivel-Quintana didn't necessarily change the landscape in this circuit at all because we already had the Rangel case before it. And even if there has been some application of the Rangel case, that Rangel case also had a carve-out for special. Judge Keenan brought up what seems to me to be an excellent point, and that is the statutory rate is simply different from what we're talking about here because of the element of at least ostensible consent. And there's no, he says many of these crimes are committed without any kind of consent at all. People are just, they're in many cases too young to know what's happening to them. And so it does seem to me that that's kind of a special category because you're talking about sexual intercourse between two consenting parties. And that seems to me very different from what we're talking about here. Yes, Your Honor, and I think, absolutely, and I think that's part of the reason why we framed our brief in the way that we did because once the statute is a matched discourse generic definition of sexual abuse of a minor, because it doesn't implicate any sort of, because it's not statutory rape, the question is over. Obviously, the relationship that Esquivel-Quintana referenced, discussed, that issue is not unavoidable. We have to brief it. But we do feel that, yes, the Supreme Court was extremely limited in its holding, and it was dealing only specifically with generic statutory rape, and this is not it. This has a mens rea, a strong mens rea. And the relationship itself also takes it out of what is statutory rape.  I just want to mention what I think is my strongest point, that every other jurisdiction in the Fourth Circuit that criminalizes activity with victims up to age 18 limits it to sexual contact. So the generic approach works by looking to the generic sense of the term as it's used in the criminal codes of most states. So the conduct that, a lot of conduct that is criminalized by this. Our own precedent here in Perez, that's what we're bound to follow. Yes, but Perez itself included a concurrence that invited future courts to revisit Diaz-Ibarra. I mean, Perez, Judge Davis was not satisfied with the result in Perez, and so if we're going to be true to the spirit that he expressed in his concurrence, this could be an opportunity to revisit. But as I said, I don't think anything needs to be overruled. And the reason is this Court has never defined what misuse or maltreatment of a woman. The word revisit, it always strikes a little, it always strikes me a little idly because I'm not, it strikes me as an invitation to do something with precedent that we're not allowed to do. Sure, but in this case we have a Supreme Court decision that might allow us to do it. So unless there are any further questions, I think I'll rest on that. We thank you very much, thank both of you. We will adjourn court and come down and greet counsel. This Honorable Court stands adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Julius N. Richardson